IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

COMPUTER AUTOMATION
SYSTEMS, INC.                                                                    PLAINTIFF

v.                                          Case No. 3:12-CV-03146

INTELUTIONS, INC.                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Intelutions, Inc.'s Motion to Dismiss for Lack of Jurisdiction, Improper Venue, and Failure to Join a Necessary Party (Doc. 13), and brief in support; Plaintiff Computer Automation Systems, Inc.'s Response in Opposition (Doc. 19) and brief in support; Defendant's Reply (Doc. 23); and Plaintiff's Sur-Reply (Doc. 28). For the reasons sets forth below, the Court finds that it lacks personal jurisdiction over Defendant. Accordingly, the Court GRANTS Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. 13), without addressing Defendant's alternative bases for dismissal, including improper venue and failure to join a necessary party.

## I. Background

According to the Complaint (Doc. 1) and Motion for Preliminary Injunction (Doc. 2), both filed on November 16, 2012, Plaintiff Computer Automation Systems, Inc. alleges that Defendant Intelutions, Inc. illegally appropriated Plaintiff's copyright-protected computer software program. Plaintiff is an Arkansas corporation that creates and services educational software products for various school districts across the nation. In 2006, Plaintiff entered into a contract with the Puerto Rican Department of Education ("PRDE") for the use of a copyrighted software product developed

-1-

by Plaintiff called Special Education Automation Software ("SEAS").  School districts utilize SEAS to manage and input data for students with special education needs.

Four years later, in 2010, the PRDE informed Plaintiff that it wished to build an electronic data warehouse to store a complete back-up copy of all of the PRDE's special education student data, which was integrated with Plaintiff's SEAS software.  To accomplish its goal, the PRDE hired Defendant, a Puerto Rican corporation, to design and build the back-up data warehouse.  The PRDE then asked Plaintiff to create a file transfer protocol to transmit a complete software back-up, including updated student data, from Plaintiff's server in Arkansas to the PRDE's server in Puerto Rico.  Every week for the next two years, Plaintiff sent back-up files to the PRDE through a largely automated process.  Defendant would then access these files directly from the PRDE and use the files to build the PRDE's back-up data warehouse.  According to the Complaint, Plaintiff gave Defendant  qualified permission to copy the SEAS database and operational platform, including the copyright-protected Source Code, Stored Procedures, Schema, and Data Dictionary, with the understanding that such copying would be done only for the purpose of building the PRDE's back-up data warehouse.

On September 26, 2012, the PRDE notified Plaintiff that it was cancelling its contract for special education software services.  Plaintiff alleges that Defendant made an illegal copy of Plaintiff's SEAS program in order to pass the program off as Defendant's own, in violation of federal copyright law.  Plaintiff  further contends that the PRDE replaced Plaintiff's SEAS program with Defendant's illegal copy, and that Defendant plans to market this illegal copy to other current or potential clients of Plaintiff, thereby damaging Plaintiff's reputation in the computer software industry and depriving Plaintiff of profits through both copyright infringement and unfair

competition.

Rather than respond on the merits to Plaintiff's allegations, Defendant filed a Motion to Dismiss (Doc. 13) on December 17, 2012, citing as alternative bases for dismissal the Court's lack of personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Rule 12(b)(3), and failure to join a necessary party pursuant to Rule 19.  The Court determined that the issue of the Court's personal jurisdiction over Defendant took precedence over all other pending issues, and on January 25, 2013, ordered that Plaintiff's Motion for Preliminary Injunction be held in abeyance until Defendant's Motion to Dismiss on the basis of lack of personal jurisdiction was decided.  (Doc. 25).  The Court now takes up this threshold matter of jurisdiction, which has been fully briefed by the parties.

## II. Legal Standard

"The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Info. Services Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).  Considering that a plaintiff is only required to make a prima facie showing of jurisdiction to defeat a motion to dismiss pursuant to Rule 12(b)(2), "the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Dakota Indus., Inc. v. Dakota Sports Wear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). Nevertheless, "[t]he plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citation omitted).

In undertaking an analysis of personal jurisdiction, the Court must examine whether the

-3-

exercise of such jurisdiction is proper under the long-arm statute of the forum state, Arkansas. *The Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225 (8th Cir. 1987). Arkansas' long-arm statute provides for jurisdiction over persons and claims to the maximum extent permitted by the due process clause of the United States Constitution. *Pangaea Inc. v Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011); Ark. Code Ann. § 16-4-101. "Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). In addition, there must be evidence of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

The Supreme Court has observed:

Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location of litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World-Wide Volkswagen*, 444 U.S. at 294.

There are two ways in which the due process clause may be satisfied such that minimum contacts between the defendant and the forum state are established: the first way is through general jurisdiction, and the second way is through specific jurisdiction. General jurisdiction refers to the power of a court to hear a lawsuit against a defendant who has "continuous and systematic" contacts

with the forum state, regardless of where the cause of action actually arose. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Here, Plaintiff concedes that the Court cannot maintain general personal jurisdiction over Defendant. Instead, Plaintiff argues that the Court has the power to exert specific jurisdiction over Defendant, as Defendant has allegedly directed its activities to Arkansas, and Plaintiff's lawsuit "relates to" or "arises from" those activities. *Johnson v. Arden*, 614 F.3d 785, 794-95 (8th Cir. 2010).

## III. Discussion

"Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum state, the cause of action, and the defendant." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912 (8th Cir. 2012) (citing *Helicopteros*, 466 U.S. at 414). The Eighth Circuit has established a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant. These factors, from *Land-O-Nod v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983), are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. "[The court] must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal jurisdiction determination." *Johnson*, 614 F.3d at 794 (citation omitted).

In addition to the five *Land-O-Nod* factors, the Court must consider whether a defendant's intentional acts were performed "for the very purpose of having their consequences felt in the forum state." *Dakota*, 946 F.2d at 1390-91. This is known as the "effects test," and it was first employed by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), a case involving a libel claim made

by Shirley Jones, a California-based entertainer, against reporters residing in Florida who wrote an article about her in the *National Enquirer* magazine. The *Calder* court found that the Florida defendants were subject to California's personal jurisdiction because the defendants' acts were intentional, the allegedly libelous article they wrote was centered on the life and career of a longstanding California resident, "and the brunt of the harm, in terms both of [Jones's] emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 789. Because the defendants' acts were "expressly aimed at California," and they knew that "injury would be felt by [Jones] in the State in which she lives and works and in which the National Enquirer has its largest circulation," the defendants were assumed to have reasonably anticipated being haled into court in the forum state. *Id.* at 789-90.

Turning to the case at bar, Plaintiff contends that specific jurisdiction is proper because "[Defendant's] actions at issue in this case were expressly aimed at Arkansas, and Arkansas is where the brunt of the harm and injury would be felt by [Plaintiff]." (Doc. 20, p. 1). In other words, Plaintiff relies primarily on the "effects test" articulated in *Calder* in making its prima facie showing of personal jurisdiction. Although the holding in *Calder* may certainly constitute a basis for a court's finding of personal jurisdiction, the Eighth Circuit has cautioned that the five *Land-O-Nod* factors listed above must still be weighed in every personal jurisdiction analysis. *Johnson*, 614 F.3d at 796. The *Calder* test is "merely . . . an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Id.*; *Dakota*, 946 F.2d at 1391 ("In relying on *Calder*, we do not abandon the five-part test . . . We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged."). Accordingly, as the Complaint's allegations of copyright infringement and unfair competition are intentional and tortious in nature, the Court will

explore the five *Land-O-Nod* factors as well as the *Calder* test in assessing the Court's personal jurisdiction over Defendant.

### A. Land-O-Nod Factors

#### 1. Nature and Quality of Contacts

The first *Land-O-Nod* factor concerns the nature and quality of a defendant's contacts with the forum state, which in this case is Arkansas. Initially, the Court finds that Defendant did not have a contractual or other business relationship with Plaintiff. In addition, the alleged copying of Plaintiff's software was done entirely in Puerto Rico. Defendant was only able to access Plaintiff's proprietary software in Puerto Rico, through files provided to Defendant by Plaintiff's own client, the PRDE. Finally, it is undisputed that Defendant has never maintained business, property, offices, employees, or agents in Arkansas, and none of Defendant's agents or employees have ever traveled to Arkansas for business.

It appears that many of the contacts alleged between Plaintiff in Arkansas and Defendant in Puerto Rico were made indirectly, through the parties' mutual client, the PRDE. Once the PRDE determined that it needed a back-up data warehouse for its special education student data, the protocol was established wherein Plaintiff would make an electronic transfer of files to the PRDE each week. Once the files were received, the PRDE would provide them to Defendant. At that point, if there were a question or a problem with the files, or if work needed to be done on the files, such a request for assistance would be conveyed from Defendant to Plaintiff through (1) the PRDE's representatives in Puerto Rico, (2) a third party contractor named NuStream Consulting Corporation ("NuStream"), which was based in Puerto Rico, or (3) Plaintiff's Puerto Rico Project Manager, Lourdes Abellas ("Abellas"), who was also based in Puerto Rico.

Plaintiff contends that Defendant "was intricately involved in the request for [Plaintiff's] copyrighted materials and for [Plaintiff] to engage in work to accommodate [Defendant's] needs." (Doc. 28, p. 6).  However, being "involved" in a request for work is not the same as making direct contact with Plaintiffs in Arkansas to secure copyright-protected information in order to make an illegal copy of Plaintiff's software.  It is undisputed that Defendant was a contractor working for the PRDE.  To the extent that Defendant was given access to Plaintiff's data files or directed that changes be made to the files, the Court observes that the entity that actually commissioned the back-up data warehouse project was the PRDE.

Plaintiff gives two examples of direct contacts between Defendant and Plaintiff.  The first is in the form of email communications directed to Plaintiff concerning the copying of data files for the PRDE's data warehouse.  These emails, however, are addressed not only to Plaintiff's employees but to representatives of the PRDE (Docs. 28-1, 28-2).  These emails only serve to reinforce the Court's conclusion that Defendant had no meaningful, direct contact with Plaintiff in Arkansas, but instead Defendant would pass work requests to the PRDE, which in turn would make those requests to Plaintiff, or, alternately, Defendant would pass requests to third party NuStream, which in turn would pass the requests to the PRDE, which would then pass the requests to Plaintiff.  Here we see two, if not three, levels of separation between Defendant's contacts with Plaintiff, and such attenuated contacts are not of the nature and quality that the Court considers sufficient under the Due Process Clause.  Furthermore, even if direct, one-on-one emails between the parties existed, a review of the relevant Eighth Circuit case law reveals that, in general, if a defendant's connection to the forum state is established merely through emails, calls, or faxes sent back and forth, such contacts alone do not satisfy Due Process.  *See, e.g., Viasystems*, 646 F.3d at 594 (scattered emails, phone

calls, and wire transfers do not constitute deliberate and substantial connection with forum state); *Digi-Tel*, 89 F.3d at 523 (numerous letters, faxes, and phone calls to forum state not enough to create jurisdiction); *Porter v. Berall*, 293 F.3d 1073, 1076 ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause.").

The second example Plaintiff provides of direct, or purposeful, contact between Defendant and Plaintiff is Defendant's communications with Plaintiff's employee Abellas[1] in Puerto Rico. Defendant's employees are alleged to have communicated directly and extensively with Abellas, through face-to-face meetings, phone calls, and emails over a two-year period and during the course of Defendant's alleged scheme to copy Plaintiff's proprietary software. Plaintiff's argument in a nutshell is as follows: each time Defendant (in Puerto Rico) contacted Abellas (in Puerto Rico) with a question, problem, or work request related to the PRDE's data warehouse (built and maintained in Puerto Rico at the Puerto Rican government's direction), each such contact was also directed to Plaintiff in Arkansas, where the question, problem, or work request ultimately would be addressed.

After careful consideration, the Court concludes that Defendant's contacts with Abellas in Puerto Rico are insufficient to constitute purposeful availment of the laws of Arkansas. "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693-94 (8th Cir. 2003) (citation omitted) (emphasis in original).

_____

[1] Abellas resides permanently in Puerto Rico. She "serv[ed] as a conduit between [Plaintiff's] headquarters in Arkansas and the Puerto Rican government, as well as any third-party vendors with whom the Puerto Rican government request[ed] [Plaintiff] to work." (Doc. 19-2).

Here, the Court finds that, in keeping with the requirements of the Due Process Clause and the holding of the Supreme Court in *International Shoe Co. v. Washington*, "traditional notions of fair play and substantial justice" would be offended if this Court exerted personal jurisdiction over Defendant, particularly if the only substantial contacts between Defendant and the forum state were ones made solely by or through third parties, or through an employee of Plaintiff's who resides in and conducts business on behalf of Plaintiff exclusively in Defendant's state of residence.  326 U.S. 310, 316 (1945).  The Court therefore finds that, due to the nature and quality of the contacts between the parties, Defendant could not have reasonably anticipated being haled into court in Arkansas, and thus, the first *Land-O-Nod* factor weighs in favor of Defendant.

### 2.  Quantity of Contacts

Because the nature and quality of the contacts between Defendant and Arkansas are insufficient to confer specific jurisdiction, the numerosity of such contacts is immaterial to the Court's analysis.  Even if the Court were to assume that dozens of emails related to the SEAS software and the PRDE's back-up data warehouse project passed between the parties, Plaintiff has failed to establish a prima facie case that these contacts were direct or exclusive in nature—as between Plaintiff's representatives in Arkansas and Defendant's representatives in Puerto Rico— or that such contacts were "uniquely or expressly aimed" at Arkansas.  *Johnson*, 614 F.3d at 796. Instead, it appears to the Court that the contacts identified by Plaintiff are composed of group emails that include not only Plaintiff's and Defendant's employees, but also employees of the PRDE and/or NuStream.  Such emails, however numerous, do not establish minimum contacts between Defendant and Arkansas.  Moreover, any contacts, however numerous, between Defendant and Abellas, Plaintiff's Puerto Rico-based employee, are by their nature insufficient to create a substantial

connection between Defendant and Arkansas, for reasons discussed above. Therefore, the second *Land-O-Nod* factor weighs in favor of Defendant.

### 3. Relation of the Cause of Action to the Contacts

The third factor focuses on a defendant's contacts with the forum state with respect to the particular cause or causes of action asserted. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994). Here, Plaintiff alleges causes of action for both copyright infringement and unfair competition. However, there is no relationship between Arkansas and these causes of action. Any violation of law committed by Defendant had to have occurred after Plaintiff's data files left Arkansas and arrived electronically in Puerto Rico. Defendant had no contact with Plaintiff's server in Arkansas. Any work requests made by Defendant were not aimed at Arkansas, but rather were aimed at Puerto Rico through the PRDE's representatives or NuStream's representatives.

For purposes of proving a claim of illegal copying, a plaintiff must establish that it owns a valid copyright in a work, that the defendant had access to the copyrighted work, and that a substantial similarity exists between the original work and the defendant's copy. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987). If the forum state is only implicated as the place where a copyrighted work was stored prior to copying, such a detail appears to be irrelevant to proving an infringement claim. Plaintiff could have transmitted its data files to the PRDE from any state, or even from a foreign country, and this information would not have altered the fact that the alleged copying occurred exclusively in Puerto Rico. Accordingly, the Court finds that the third *Land-O-Nod* factor weighs in favor of Defendant.

### 4. Interest of Forum and Convenience of Parties

Before the Court considers the final two *Land-O-Nod* factors, it is important to recognize that

-11-

they cannot outweigh the first three factors. *See Land-O-Nod*, 708 F.2d at 1340 ("For instance, the last two factors are said to be of secondary importance and not determinative."). Even if the Court were to assume that the fourth factor, which concerns the interest of the forum in litigating this matter, weighed in favor of Plaintiff, the fifth factor, which concerns the convenience of the parties, must weigh in favor of Defendant. The Court finds that litigating this case in Arkansas would be inconvenient not only to Defendants and their Puerto Rico-based witnesses, but also potentially to Plaintiff, whose witnesses are likely to include Abellas of Puerto Rico, certain employees of the PRDE, and certain employees of the Puerto Rican company NuStream. The Court therefore concludes that though the fourth *Land-O-Nod* factor may weigh in favor of Plaintiff, the fifth *Land-O-Nod* factor does not. Arkansas' "interest in providing its residents with a forum cannot make up for the absence of minimum contacts." *Digi-Tel*, 89 F.3d at 525.

### B. *Calder* Effects Test

In addition to the five-part *Land-O-Nod* test, the Court must also weigh whether the brunt of the injury allegedly incurred by Plaintiff was most strongly felt in the forum state, pursuant to the *Calder* "effects" test. Under certain circumstances, personal jurisdiction can be exerted over a tortfeasor that intentionally directs its tortious acts to the forum state. *Calder*, 465 U.S. at 789.

"'Damage to intellectual property rights (infringement of a patent, trademark, or copyright) by definition takes place where the owner suffers the damage.'" *Dakota*, 946 F.2d at 1388 (quoting *Acrison, Inc. v. Control & Metering, Ltd.*, 730 F.Supp. 1445, 1448 (N.D. Ill. 1990)). The Court agrees that injuries suffered by Plaintiff would be felt most readily in Arkansas, the state of Plaintiff's incorporation and residence. However, it is not the case that personal jurisdiction over a defendant will be presumed merely because an intentional tort has been alleged. The Eighth

-12-

Circuit has "construe[d] the *Calder* effects test narrowly, and [held] that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Johnson*, 614 F.3d at 796-797.  Accordingly, even if Plaintiff could establish Defendant's knowledge as to Plaintiff's ownership of copyright-protected software and as to Plaintiff's residence in Arkansas, these facts alone would be insufficient to confer personal jurisdiction over Defendant pursuant to the *Calder* test.  Something more than mere effects is needed.

Cases decided throughout this Circuit uniformly hold that in order for a defendant's tortious conduct to confer personal jurisdiction in an intellectual property holder's state of residence, there must be a prima facie showing that the defendant's intentional acts were "performed for the very purpose of having their consequences felt in the forum state." *Dakota*, 946 F.2d at 1391 (internal citation omitted).  *See, e.g., Johnson*, 614 F.3d at 796 (no personal jurisdiction where defendant's allegedly defamatory comments not expressly aimed at forum, and no other evidence of minimum contacts existed); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 WL 2199967, *4 (E.D. Mo. June 7, 2011) (no personal jurisdiction where defendant did not knowingly target trademark infringement at forum, and defendant had no other contacts with forum); *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (no personal jurisdiction where defendant had knowledge that plaintiff would be affected by intentional tort, but otherwise had no other connection with forum); *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir. 1993) (no jurisdiction where "focal point" of the tortious injury occurred in outside forum, even though court agreed that effects of harm ultimately were felt in forum).

Even a close examination of *Calder* reveals that the Supreme Court's finding of personal jurisdiction in that case depended on something more than the defendants' knowledge that the

-13-

plaintiff would feel the brunt of the injury in her state of residence. 465 U.S. at 1484-85. Other contacts between the defendants and the forum state were found in *Calder*, including the fact that the defendants made frequent trips to the forum for business, made direct phone calls to residents of the forum in furtherance of the tort, and published the defamatory article about the plaintiff in the forum, a state where the defendants' publication had its highest circulation. *Id.* All of these facts combined evidenced the *Calder* defendants' purposeful availment of the forum and justified the court's exertion of personal jurisdiction over them.

In considering the case at bar, the Court observes that there are rarely bright line rules accompanying jurisdictional questions. These types of legal inquiries require a court to weigh and balance a number of factors and make a decision based on the totality of the circumstances. *Kulko v. Superior Court of California*, 436 U.S. 84, 92 (1978) (". . . the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present . . . We recognize that this determination is one in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable.") (internal quotation omitted).

Here, personal jurisdiction over Defendant is not justified by the facts of this case. Defendant clearly lacks any traditional business contacts in Arkansas, such as offices, agents, representatives, employees, or property holdings. Defendant has never sent any representatives to Arkansas. Defendant secured the opportunity to access and allegedly copy Plaintiff's intellectual property from files transmitted to Puerto Rico, not Arkansas. Defendant committed all alleged violations of law in Puerto Rico, not Arkansas. Finally, though Defendant exchanged some emails with Plaintiff in Arkansas, all face-to-face contacts between Plaintiff's and Defendant's representatives occurred in Puerto Rico. In sum, given the complete absence of any substantial connection between Defendant

-14-

and the forum, the Court cannot exercise personal jurisdiction over Defendant solely because the effects of the Plaintiff's alleged injury are most strongly felt in Arkansas.

## IV.  Conclusion

For the reasons described above, the Court has determined that it lacks personal jurisdiction over Defendant. Accordingly, the Court GRANTS Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. 13) and does not address Defendant's alternative bases for dismissal, including improper venue and failure to join a necessary party.  This case is hereby dismissed without prejudice.

IT IS SO ORDERED this 8th day of February, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE